UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BOUELY CHARLES NADAUD,

              Petitioner,                          Case No. 1:26-cv-90

v.                                       Honorable Hala Y. Jarbou

DONALD EMERSON et al.,

              Respondents.

_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 3, PageID.16–17.)

In an order entered on January 13, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5.) Respondents filed their response on January 16, 2026, (ECF No. 6), and Petitioner filed his reply on January 17, 2026, (ECF No. 7).

## II.    Relevant Factual Background

"Petitioner is a citizen of France who entered the United States on September 3, 2007, at Chicago O'Hare International Airport with an authorized period valid until December 7, 2007 under the visa waiver program." (Pet., ECF No. 1, PageID.6.) "On August 21, 2012, ICE issued [Petitioner] an Order of Deportation as a Visa Waiver Program Violator." (Anderson Decl. ¶ 5, ECF No. 6-1, PageID.50; Order Deportation, ECF No. 1-4, PageID.27.) At that time, Petitioner "was issued an Order of Supervision that ordered him to check in with ICE on request." (Anderson Decl. ¶ 5, ECF No. 6-1, PageID.50 Order Supervision, ECF NO. 1-5, PageID.29.)

"On April 24, 2020, Petitioner's wife filed an I-130 petition on [Petitioner's] behalf, which was approved on February 24, 2023" by the United States Citizenship and Immigration Services.[1] (Pet., ECF No. 1, PageID.6; Anderson Decl. ¶¶ 6–7, ECF No. 6-1, PageID.51.)

On July 30, 2025, ICE arrested Petitioner "when he reported" for an ICE check-in. (Pet., ECF No. 1, PageID.7; Reply, ECF No. 7, PageID.55.) "On July 6, 2025, ICE submitted a travel document request to the Consulate of France," and the Consulate of France denied the request on August 6, 2025, "stating that [Petitioner] is not a French national." (Anderson Decl. ¶¶ 9–10, ECF No. 6-1, PageID.51.) ICE then "submitted a travel document request to [the] Consulate of the United Kingdom on [Petitioner]'s behalf," and "[o]n September 18, 2025, the Consulate of the United Kingdom denied the travel document request stating that [Petitioner] is not a national of the United Kingdom." (*Id.* ¶¶ 11–12.)

---

[1] Petitioner does not contend that the approval of the I-130 petition by the United States Citizenship and Immigration Services affected the 2012 deportation order. (*See* Pet., ECF No. 1, PageID.7.)

On October 28, 2025, ICE Enforcement and Removal Operations (ERO) conducted "a Post Order Custody Review" and "determined that removal was likely in the reasonably foreseeable future and decided to maintain detention." (*Id.* ¶ 13.)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Merits Discussion

The parties agree that because Petitioner has a final order of deportation, which orders his removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Resp., ECF No. 6, PageID.44–46; Reply, ECF No. 1, PageID.25–28.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.7–8.) In response, Respondents argue that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 6, PageID.44–46.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of deportation became final on August 21, 2012. The 90-day removal period following the order

expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the

---

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

In this case, Petitioner was taken into custody by ICE on July 30, 2025, and as of January 30, 2026, Petitioner was in custody for six months. Respondents argue that at the time that Petitioner filed his § 2241 petition on January 9, 2026, he had not been detained for six months, and they cite *Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010), for the proposition that "[a] later passage of time does not retroactively establish a claim that did not exist at filing." (Resp., ECF No. 6, PageID.44.) The Court notes that *Farmer* does not address the specific issues presented in this case. Nonetheless, even assuming, without deciding, that the "six-month period of presumptively reasonable detention" applies to Petitioner's present § 2241 petition, as explained below, the Court concludes that Petitioner has proven that his deportation is "not reasonably foreseeable." *See Munoz-Saucedo*, 789 F. Supp. 3d at 395–97.

Specifically, to prove that his deportation is "not reasonably foreseeable," Petitioner cites the declaration submitted by Respondents, in which the declarant attests that on August 6, 2025, France denied ICE's travel document request and that on September 18, 2025, the United Kingdom also denied ICE's travel document request, with these countries "stating that [Petitioner] is not a French national," nor "a national of the United Kingdom." (Anderson Decl. ¶¶ 9–12, ECF No. 6-1, PageID.51.) Petitioner argues that the declarant "admits here that the removal of Petitioner is not reasonably foreseeable." (Reply, ECF No. 7, PageID.58.) Petitioner initiated this action on January 9, 2026, and there is nothing in the record before the Court to indicate that Respondents have taken any further action to effect the deportation of Petitioner after the United Kingdom's denial of ICE's document request on September 18, 2025. Although Respondents bear no burden during the six-

month period to justify detention, the facts presented in the record before the Court, as set forth above, are sufficient to "prove" that Petitioner's deportation is not reasonably foreseeable.[3]

### V.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

### VI.    Proper Respondents

Respondents argue that Petitioner has failed to name a proper Respondent because he has not named the Detroit ICE Field Office Director as a Respondent.[4] The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *cf. Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Acting Director of ICE and the Secretary for the Department of Homeland

---

[3] Moreover, if the Court viewed Petitioner's present detention as beyond the six-month period of presumptively reasonable detention, the Court would conclude that Petitioner has shown that there is "good reason to believe" that "there is no significant likelihood of removal in the reasonably foreseeable future," and that Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701.

[4] The Court previously dismissed the Warden of North Lake Processing Center as a Respondent. (Order, ECF No. 5.)

Security as Respondents. The Court will dismiss the United States Attorney General as a Respondent.

### Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions that existed under Petitioner's prior order of supervision. The Court will also order Respondents to file a status report within five days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will dismiss the United States Attorney General as a Respondent.


Dated: February 6, 2026                              /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     CHIEF UNITED STATES DISTRICT JUDGE